# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REALTIME DATA LLC d/b/a IXO,

                Plaintiff,

      v.

REDUXIO SYSTEMS, INC.,

                Defendant.

C.A. No. 1:17-cv-01676-GMS

## PLAINTIFF REALTIME DATA LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION (D.I. 9) TO DISMISS

May 1, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
Paul A. Kroeger
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Data LLC*

## TABLE OF CONTENTS

**Page(s)**

I.   RELEVANT BACKGROUND ............................................................... 1

II.  REDUXIO FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101 ........................................................ 2

    A.   Reduxio Cannot Clearly And Convincingly Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1 ..............................2

        1.  Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter. ...................3

        2.  Reduxio's Argument Mischaracterizes The Law And The Claims ........7

    B.   Reduxio Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2. ...........................................................................14

        1.  Section 101 analysis under *Alice* step 2 involves questions of fact. .....14

        2.  The intrinsic record confirms that the claimed inventions involve unconventional technological solutions under step 2. ...................16

        3.  Reduxio's "Remaining Claims" Shortcuts Also Fail. ..........................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing v. Blackberry Ltd.*,
   No. 17-82-LPS-CJB (D. Del. Mar. 22, 2018) .................................................. 10

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   -- F.3d --, 2018 WL 843288, *6 (Fed. Cir. Feb. 14, 2018). .................................. 15

*Affinity Labs of Tex., LLC v. Amazon.com, Inc* ................................................. 10

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347, 2354 (2014) ......................................................................... 2

*Apple, Inc. v. Ameranth, Inc.* ......................................................................... 9

*Berkheimer v. HP Inc.*,
   -- F.3d --, 2018 WL 774096, *6 (Fed. Cir. Feb. 8, 2018) .................................. 15

*Cal. Institute of Tech. v. Hughes Commcn's Inc.*,
   No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal Nov. 3 2014) ....... 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343, 1345 (Fed. Cir. 2014) ............................................................ 10

*Core Wireless Licensing v. LG Elecs., Inc.*,
   --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018). .............................. 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d at 1366 ......................................................................................... 13

*DDR v. Hotels.com LP*,
   773 F.3d 1245, 1257 (Fed. Cir. 2014) ............................................................ 4

*Enfish, LLC v. Microsoft Corp*,
   822 F.3d 1327, 1337 (Fed. Cir. 2016) ............................................................ 3

*Estee Lauder v. L'Oreal*,
   129 F.3d 588, 595 (Fed. Cir. 1997) ............................................................... 15

*FairWarning IP v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .................................................................... 10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   --- F.3d ---, 2018 WL 341882, at *2 (Fed. Cir. Jan. 10, 2018). ......................... 3

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)................................................................................................ 10

*GT Nexus, Inc. v. Inttra, Inc.*,
    No. C 11-02145-SBA, 2015 WL 6747142, at *5 (N.D. Cal. Nov. 5, 2015)............................ 10

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)................................................................................. 10

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)............................................................................. 9, 10

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)................................................................................ 10

*IOP Techs., Inc. v. Amazon.com, Inc.*,
    728 F.3d 1359, 1363 (Fed. Cir. 2015)..................................................................... 10

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ................................. 20

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339, 1351 (Fed. Cir. 2001)..................................................................... 9, 15

*Realtime Data LLC v. Actian Corp. et al.*,
    C.A. No. 15-cv-463-RWS-JDL, Dkt. No. 184 (E.D. Tex. Nov. 30, 2015) ................... 2, 11, 12

*Realtime Data LLC v. Carbonite, Inc.*,
    C.A. No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017) ........................................... 1

*TQP Dev., LLC v. Intuit Inc.*,
    2:12-CV-180-WCB, 2014 WL 651935, Dkt. 150 (E.D. Tex. Feb. 19, 2014) ....................... 13

*Visual Memory LLC v. Nvidia Corp.*,
    867 F.3d 1253, 1257 (Fed. Cir. 2017)..................................................................... 4, 9

The claims at issue here are not abstract, but rather are limited to particularized technological solutions that improve computer capabilities—e.g., digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently. The claims describe specific ways (*e.g.*, using state machine, data accelerator, performing analysis that is not based solely on a descriptor, etc.) to make this happen. Moreover, the claims require much more than well-understood, routine, conventional activities for solving the then-existing problems in the field of digital-data compression. Indeed, the intrinsic record, including the patents' specifications, demonstrate this, which in the least raises factual issues that preclude dismissal.[1]

The asserted patents and related patents have gone through §101 scrutiny before in multiple districts. A court in Texas ruled that the asserted '728 and '908 Patents are "inventive" and "directed to patent eligible subject matter" because they disclose "specific improvement[s] in computer capabilities."[2,3] And, a Massachusetts court adopted the Texas court's ruling in full. (Ex. 4.) As these rulings show, the claims are patent-eligible.

## I.      RELEVANT BACKGROUND

In a detailed, twenty-two-page opinion issued on September 20, 2017, a court in Texas ruled that the '728 and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible, in a Report and Recommendation by Magistrate Judge Love. (Ex. 1.) The other two of the four asserted patents are related to (and share the same specifications as) the patents that the Texas court ruled were patent-eligible—the asserted '203 Patent is related to the asserted

---

[1] As an example, the '908 Patent was confirmed to be patentable in a Final Written Decision by the PTAB after an *inter partes* review. (Ex. 8.)

[2] Ex. 1: *Realtime Data LLC v. Carbonite, Inc.*, Case No. 17-cv-121, D.I. 70 (E.D. Tex. Sept. 20, 2017), *e.g.,* at 7, 10, 15, 16, 20. All emphasis in quotes are added in this brief.

[3] The other two patents asserted in this case are related to the patents the Texas and Massachusetts courts held to be patent eligible—the asserted '203 Patent is related to the asserted '728 Patent, and the asserted '751 Patent is related to Pat. No. 8,717,204 at issue the other cases.

'728 Patent, and the asserted '751 Patent is related to the '204 Patent at issue in the *Carbonite* case.

On March 7, 2018, District Judge Young in Massachusetts adopted in full Judge Love's rulings "[a]fter careful consideration." (Ex. 4.) These courts held that the patents are directed to patent eligible subject matter, and that they are also inventive. In addition, two judges in Texas also denied other §101 motions involving two of the three patent families at issue here.[4]

## II.    REDUXIO FAILS TO DEMONSTRATE THAT ANY OF THE CLAIMS OF THE FOUR PATENTS-IN-SUIT ARE INVALID UNDER §101.

Under 35 U.S.C. §101, patent eligibility is to be construed broadly, and the exceptions are narrow. One exception is the "abstract idea" exception. The Supreme Court has warned against interpreting the exception too broadly, as that could could "swallow all of patent law" because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

### A.    Reduxio Cannot Clearly And Convincingly Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1.

The threshold inquiry of the §101 analysis requires Reduxio to demonstrate that the patent claims are directed to an "abstract idea," *i.e.*, an "idea of itself" or "fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2355. Reduxio fails to do so here. Under any fair characterization, the claims here are patent-eligible because they provide particular,

---

[4] In one, Magistrate Judge Love held that "an assessment of the claims at issues—by a careful reading of the claims themselves—does not clearly reveal that the patents are abstract." (Ex. 2.) In the other, District Judge Schroeder adopted this ruling and further held that under Realtime's view, namely, that the claims are directed to the compression of digital data, the argument that the patents are directed to an abstract idea "would fail" because the patents "provide technological solutions to problems arising specifically in the realm of computer technology." (Ex. 3.) *Realtime Data LLC v. Actian Corp. et al.* (E.D. Tex. Case No. 15-cv-463) involved the '908 Patent asserted in this case, as well as Pat. Nos. 7,378,992 and 8,643,513, which are related to (and share identical written description with) the '728 and '203 Patents asserted here.

technical solutions to technical problems specific to compression of digital computer data.

**1.      Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter.**

Under the Supreme Court's *Alice* framework, claims that "improve[] an existing technological process" or "solve a technological problem in 'conventional industry practice'" are patent eligible. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has applied these standards in several controlling cases to uphold the patentability of claims challenged as abstract.

In *Finjan*, the Federal Circuit held eligible a patent for identifying suspicious computer virus. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-06 (Fed. Cir. 2018). Finjan's claim recited only three steps: (a) "receiving" computer program; (2) "generating … security profile that identifies suspicious code;" and (3) "linking" the security profile to the computer program. *Id.* The claim did not specify *how* to "identif[y] suspicious code." *Id.* at 1303. While acknowledging that prior Federal Circuit precedent has held that "virus screening," by itself, is an abstract idea, the court nevertheless held that Finjan's patent claim was not abstract because it was not directed to just any "virus screening," but instead limited to a particular type of virus screening, which constituted improvement in computer functionality. In so holding, the court rejected the same argument advanced by Haivision here, namely, that the claims "do not sufficiently describe how to implement" any idea. *Id.* at 1305. On this point, the court held that the three recited claimed steps were all that was needed to render the claim patent-eligible. *Id*.

In *Enfish*, the Federal Circuit reversed an ineligibility ruling on a database patent, which the district court described as being directed to "storing, organizing, and retrieving memory in a logical table." *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The Federal Circuit held that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* It further

3

criticized the district court's analysis for "downplay[ing] the invention's benefits" disclosed in the specification. *Id.* at 1337–38. Because the claims were "**designed to improve the way a computer stores and retrieves data in memory**," they were "directed to a specific implementation of a solution to a problem in the software arts" and, thus, "not directed to an abstract idea." *Id.* at 1339.[5]

In *Visual Memory*, the claims recited "memory" and "processor" with "operational characteristics" which "determines a type of data." *Visual Memory LLC v. Nvidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). Here, the court rejected defendant's argument that the claims "are directed to no more than a desired result" or that the patent claims "nothing more than a black box." *Id.* at 1260-61. The court cautioned against over-simplifying the claims, and held that they were directed to "improvements to computer functionality" as opposed to "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1258-1261.

In *Core Wireless*, the Federal Circuit affirmed eligibility of a patent about summarizing and presenting information in electronic devices. *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). In so doing, the court rejected defendants' failure to acknowledge key claim elements and cautioned that courts "must be mindful that all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 1361. It held that the patent claimed "an improvement in the functioning of computers" (*id.* at 1363) because the claims were limited "to a ***particular*** manner of summarizing

---

[5] Similarly, in *DDR*, the claims addressed "the problem of retaining website visitors." *DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Despite being directed to e-commerce, the court held that these claims "stand apart" from abstract claims "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Instead, "the claims recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259. Thus, they were eligible because the patented claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

and presenting information in electronic devices." *Id.* at 1362. As in *Core Wireless*, the patents at issue here claim particular manners of selecting and compressing digital data to improve the capacity of a computer system to store more data or to transfer data more efficiently.

As in *Finjan, Enfish, DDR*, *Visual Memory*, and *Core Wireless*, the claimed inventions here provide particular technological solutions to overcome technological problems specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of data "not easily recognizable to humans in native form." (*E.g.*, '908 Patent at 1:22-56; '728 Patent at 1:52–67.) In this realm, the patents describe particular combinations of steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

The patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the '728 and '203 Patents describe various problems in the conventional art, including the "content sensitive behavior" of various compression techniques and the "extremely large number of application programs" and data types or content. (*E.g.,* '728 Patent at 2:29-3:19.) The '728 / '203 Patents solved these problems by providing systems utilizing two digital-data compression techniques (e.g., content dependent and content independent) to compress/decompress data blocks based on analysis of the specific content of data. And the patents overcame the issue of relying solely on a descriptor (e.g., file extensions such as ".doc," ".txt," etc.) by requiring a direct examination of the digital-data payload rather than examining just the descriptor. (*E.g.,* '728 Patent claim 1.) The '908 Patent solved problems in the conventional digital data compression arts by providing systems utilizing *two different* encoders. (*E.g.,* '908 Patent claim 1.) And the '751 Patent solved problems in the conventional digital-data compression by utilizing a state machine to

5

compress data blocks based on an analysis of the specific content of the data being encoded. (*E.g.,* '751 Patent claim 1.) The claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data compression.

In fact, applying the Federal Circuit's analysis, Realtime's patents present a clearer case of subject-matter eligibility than those held eligible in *DDR*. In that case, after analyzing the claims, which were directed to the "look and feel" of websites, the court held that, although "the [asserted] claims do not recite an invention as technologically complex as an improved, particularized method of **digital data compression**," they were nonetheless patent eligible. 773 F.3d at 1259. The claims here thus present precisely the type of invention the Federal Circuit recognized as unquestionably patent eligible—particularized systems and methods of digital data compression.

Indeed, applying the Supreme Court and Federal Circuit precedents, courts in Texas and Massachusetts have held that these same and related patents are §101 eligible. (Ex. 1-4.) For instance, a Texas court ruled that the '728 and '908 Patents asserted here, as well as Pat. No. 8,717,204 ('204 Patent), are patent eligible, in a Report and Recommendation by Magistrate Judge Love. (Ex. 1.) Then, Judge Love's rulings were adopted in full by District Judge Young in Massachusetts after that case was transferred there.[6] (Ex. 4.) The other two of the four asserted patents are related to (and share the same specification as) the patents that the Texas and Massachusetts courts ruled were patent-eligible—the asserted '203 Patent is related to the asserted '728 Patent, and the asserted '751 Patent is related to the '204 Patent at issue in *Carbonite*. These courts rejected the same arguments advanced by Reduxio here, including arguments about "generic components" (*e.g.,* Ex. 1 at 9, 11, 15, 17) or about claims purportedly reciting "function or outcome

---

[6] Reduxio appears to be ignorant of the Massachusetts court's adoption of Judge Love's rulings (*see* Mot. at 11, fn.1). Reduxio also ignores the fact that this ruling encompasses all of three patent families at issue here, not just the '728 patent.

without any specificity" (*e.g., id.* at 12, 17, 20, 21). The courts held that the patents are eligible and inventive. (*Id.*)[7]

### 2.    Reduxio's Argument Mischaracterizes The Law And The Claims

Reduxio's argument that "[t]he asserted claims are directed to a result that itself is an abstract idea" (Mot. at 6) ignores the actual character of the claims. Moreover, the Federal Circuit has *soundly rejected* the very legal premise on which Reduxio's motion is based:

> The dissent offers a different paradigm for identifying an abstract idea … that a desired goal (i.e. result or effect), absent structural or procedural means for achieving that goal, is an abstract idea... We commend the dissent for seeking a creative way of incorporating aspects of well-known doctrine [in other areas of patent law] in the search for what is an 'abstract idea,' **but that is not now the law, either in statute or court decision**.

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* 841 F.3d 1288, 1293 (Fed. Cir. 2016). The "result"/"outcome" argument was similarly rejected in *Visual Memory*, 867 F.3d at 1260-1261. Reduxio's arguments relies on the same flawed paradigm and should be rejected.

### i.    Reduxio mischaracterizes the claims.

Reduxio oversimplified the claims in reductionist terms. According to Reduxio, the asserted patents are "directed to the result or effect" of certain things—"content dependent compression" (re: '728 Patent); "content token based dependent/independent decompression" (re: '203 Patent); "compressing and storing information faster" (re: '908 Patent); or "performing content dependent compression and storage faster" (re: '751 Patent). (Mot. at 7-9). As an initial matter, Reduxio fails to identify what it means by "result or effect" of the specific claims. Nor has Reduxio cited a single case to support its position that claims involving data compression are abstract—because they are not. *See DDR,* 773 F.3d at 1259 (invention "as technologically complex

---

[7] In addition to these rulings, two judges in Texas also denied two other §101 motions involving two of the three patent families at issue here. (*See* Ex. 2, 3; *supra* §I, fn.4.) Reduxio entirely ignores these two rulings that contradict its §101 arguments.

7

as an improved, particularized method of digital-data compression" not abstract). Courts must reject oversimplifications, because "describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337. Reduxio's mis-framing of the patented inventions is contradicted by the patents, which make clear they are directed to particular digital-data compression systems.

By arguing that the claims merely invoke a "generic processor" (Mot. at 7-9), Reduxio asks the Court to ignore significant parts of the claims (including, e.g., "single data compression encoder," "content dependent data compression encoder," "excludes analyzing based solely on a descriptor," "default data compression encoder," "recognizable data tokens," "decompression decoder," "content independent data compression," "data accelerator," two different compression techniques, "data descriptor," "state machine," etc.), and thereby violate governing Supreme Court and Federal Circuit precedent. "Whether at step one or step two of the *Alice* test … a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO*, 837 F.3d at 1313. Reduxio fails to do so.

When properly viewing each patent as a distinct set of inventions, the patent-eligible nature of each particular digital-data compression claim is apparent. Even the key, summary-form aspects of each respective invention is directed to distinct technological solution: (1) systems of digital data compression/decompression utilizing two different encoders/decoders (e.g., content-dependent and content-independent) to compress/decompress data blocks based on an analysis of the specific content or type of the data ('728/'203 patents); (2) systems of digital data compression utilizing a *plurality* of encoders and a compression descriptor for accelerated storage and retrieval of data blocks ('908 patent); or (3) systems of digital data compression utilizing a state machine to compress data blocks based on an analysis of the specific content or type of the data being

8

encoded ('751 patent). Reduxio urges the Court to ignore the core concepts and claim limitations by asserting that certain words that it picked out from some claims were purportedly known individually. But claims must be viewed "as an ordered combination." *McRO*, 837 F.3d at 1313.[8]

### ii. Reduxio mischaracterizes the applicable law; technological solutions to technological problems are patent eligible.

Reduxio distorts a clear legal distinction concerning the eligibility of computer-related claims. The Federal Circuit in *Enfish*, *Finjan, Core Wireless,* and *Visual Memory* reiterated and described the salient distinction. There, the court explained that the law draws a clear line between patent claims in which "computers are invoked merely as a tool" for executing an abstract idea— which may be patent ineligible—are different from claims that provides technological solutions to technological problems (e.g., "improvement in computer capabilities")—which are patent eligible. *Enfish*, 822 F.3d at 1335-36; *Visual Memory*, 867 F.3d at 1258-59.

Applying that law here requires rejection of Reduxio's argument. It is not the mere fact that the asserted patents are in the digital domain that is relevant; rather, it is the fact that the problems that gave rise to Realtime's inventions are rooted in digital computer technologies (i.e., technological problems, as opposed to human problems), and also the fact that the solutions provided in Realtime's patented inventions are improvements on the computer capabilities. *See supra* at § II.A.1.

The cases Reduxio cites are inapposite. In each case, the claim at issue was directed to abstract matter and, on top of that, the entire "nature" or "character" of the claim language was purely functional or result-oriented. In *Apple, Inc. v. Ameranth*, the court held ineligible a business method that "merely claimed the result[s]" of a menu with certain features. 842 F.3d 1229, 1241

---

[8] "The genius of invention is often a combination of known elements which in hindsight seems preordained." *McGinley v. Franklin Sports*, 262 F.3d 1339, 1351 (Fed. Cir. 2001).

(Fed. Cir. 2016). Similarly, in *Affinity Labs of Tex. v. Amazon.com*, the court held ineligible a claim directed to the abstract idea of delivering user-selected music content that was "purely functional" in nature. 838 F.3d 1266, 1269 (Fed. Cir. 2016). Likewise, in *Electric Power*, the court held ineligible a claim directed to the abstract idea of collecting and displaying information regarding power grids, where those claims could be a "mental process." 830 F.3d at 1356. And *Content Extraction* involved patent that claimed storing data from hard copy documents. *Content Extraction & Transmission v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014).[9] The claims at issue here are nothing like the claims at issue in the cases cited by Reduxio—e.g., the asserted patents do not claim a business method, laws of nature, mathematical formula, mental process, contractual relationship, or any other abstract idea. Realtime's patented inventions are directed to the non-abstract realm of particularized digital-data compression. That some claims further require "faster" performance does not change this.

### iii. The patent claims are not "purely result-oriented," but rather provide specific technical solutions that improve computer functions

With respect to claim 1 of the '728 patent and claim 25 of the '751 patent, Reduxio asserts that the claims do not recite "any specific way of compressing data, or any specific way that data

---

[9] The other cases relied by Reduxio are likewise inapplicable. *E.g.*, *Intellectual Ventures v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) (claims re: financial budgeting); *Intellectual Ventures v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) (claims re: email screening); *In re TLI*, 823 F.3d 607 (Fed. Cir. 2016) (claims re: classifying and storing images in an organized manner, which is merely a method of "organizing human activity"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (claim re: verifying a credit card transaction); *3G Licensing v. Blackberry Ltd.*, No. 17-82-LPS-CJB (D. Del. Mar. 22, 2018) (claims re: "reordering data and generating additional data"); *OIP Techs. v. Amazon.com*, 788 F.3d 1359 (Fed. Cir. 2015) (claims re: "fundamental economic concept of offer-based price optimization"); *Alice*, 134 S. Ct. 2347 (patent about "exchanging financial obligations"); *FairWarning IP v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) (patent about "detecting improper access of a patient's protected health information"); *Gottschalk v. Benson*, 409 U.S. 63 (1972) (claims directed to mathematical formula); *GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2015 WL 6747142, at *5 (N.D. Cal. Nov. 5, 2015) (claims re: "booking and tracing container shipments through a third party").

is analyzed" (Mot. at 7, 9). The recitation of the claims themselves contradicts Reduxio. For example, claim 1 of the '728 patent recites analysis "wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data ***excludes analyzing based solely on a descriptor*** that is indicative of the one or more parameters or attributes of the data within the data block." ('728 patent claim 1.) Claim 25 of the '751 patent has a similar limitation. ('751 patent claim 25.) This type of analysis is unconventional, and the patents describe problems associated with "conventional content dependent techniques" that use "file type descriptors," including difficulties in keeping up with "the extremely large number of application programs" and "the rate at which new application programs are developed and the need to update file format data descriptions accordingly." ('728 patent at 2:67-3:19.) The inventions overcame those problems by analyzing the data instead of relying solely on a descriptor, like a file extension (e.g., ".doc," ".txt"). (*E.g.,* '728 patent claim 1.) This improved computer functions, e.g., making compression more effective and efficient for a variety of different data types/contents.[10]

Reduxio is similarly wrong that claim 14 of the '203 Patent "does not require any specific structure or any specific way" of performing decompression (Mot. at 8). Indeed, claim 14 of the '203 Patent recites specific structures and configurations, including, e.g., "data decompression processor configured" in specific ways (e.g., "configured to analyze the data packet to identify one or more recognizable data tokens associated with the data packet"; "encoder being selected based on content of the one or more data blocks"), "one or more decompression decoders configured" in specific ways (e.g., "configured to decompress … based on … recognizable data tokens"; "data

---

[10] Moreover, "content dependent data compression encoder" was construed previously in related cases to be "compression algorithm that is applied to input data that is not compressed with content independent data compression, the compression using one or more encoders selected based on the encoder's (or encoders') ability to effectively encode the data type or content of the data block." *Realtime Data LLC v. Actian Corp.*, Case No. 15-cv-463, D.I. 362 (E.D. Tex. July 28, 2016).

tokens indicate that the data block was encoded utilizing content [dependent / independent] data compression"), and an "output interface." ('203 patent claim 14.)

Reduxio is also wrong that claim 1 of the '908 Patent "does not recite any specific way to ensure that the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form" (Mot. at 8). On the contrary, claim 1 of the '908 Patent recites a "data accelerator" that is configured to have two *different* compression techniques. Moreover, the claimed storage and other functionality are "capabilities of the associated [claimed] apparatus because those capabilities are tied to either the 'data accelerator' or 'memory device.'"[11] In other words, the claims provide specific systems and methods. These are not merely "results."

In sum, the asserted claims can only be read as providing technological improvements and solutions specific to digital data compression and are not abstract. At the very least, this Court must accept all the allegations of the complaint and descriptions of the claimed inventions from the intrinsic record as true, and drawing all reasonable inferences in favor of Realtime, deny Reduxio's motion. As other courts have held, the asserted patents are not abstract. (Ex. 1-4.)

### iv. Contrary to Reduxio's overstatements, the claimed inventions obviously cannot be performed by "mental process, mathematical algorithms, or by using a pen and paper"

In its effort to mislabel the patents as "abstract," Reduxio provides the far-fetched assertion that the claims can be performed by "mental process, mathematical algorithms, or by using a pen and paper" (Mot. at 10-13). Respectfully, this argument does not pass the straight-face test.[12]

As an initial matter, Reduxio gets the law wrong. "Methods which can be performed

---

[11] *Realtime Data LLC v. Actian Corp.*, Case No. 15-cv-463, D.I. 360 (E.D. Tex. July 28, 2016).
[12] Here, Reduxio shows a material factual dispute with other defendants who have filed §101 motions, as some other defendants do not even make these arguments.

entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed **entirely** in the human mind are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (emphasis in original). Defendants do not apply the "human mind" argument to anything resembling the entire claim.

Other courts have held similar arguments inapplicable and "unhelpful." In *TQP*, Judge Bryson held as eligible claims that "involve[d] a several-step manipulation of data that, except perhaps in its most simplistic form, could not conceivably be performed in the human mind or with pencil and paper." *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 651935, at *4 (E.D. Tex. Feb. 19, 2014) (Bryson J.). Similarly, the claimed digital data compression techniques "could not conceivably be performed in the human mind or with pencil and paper." An ordinary system or method of digital data compression, let alone the particular patented inventions here, would be impossible to perform in the human mind or by pencil and paper. This is why other courts have held that this analysis is "unhelpful for computer inventions" and "mislead[s] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." *Cal. Institute of Tech. v. Hughes Commcn's Inc*., 2014 U.S. Dist. LEXIS 156763, at *994-995 (C.D. Cal Nov. 3 2014).

When looking at even the core aspects of the claimed inventions, Reduxio's analogies fall apart. For example, the patented inventions are necessarily directed to improved systems of **digital data compression**. *E.g.*, '728 Patent at Abstract and 2:65-5:12; '908 Patent at Abstract and 2:20-3:58; '751 Patent at Abstract and 1:40-5:50. This distinction alone renders visual and/or written

shorthand—like text abbreviations—wholly inapplicable. The patents themselves state the obvious rebuttal to Reduxio's incorrect "analogies": "**digital data** is thus a representation of data that [is] **not easily recognizable to humans** in its native form." *See*, *e.g.*, '908 Patent at 1:35-37 (emphasis added); '728 Patent at 1:52-54.

Moreover, in making its "human mind" / "pen and paper" arguments, Reduxio again ignores other key aspects of the claims. These aspects include: (1) using a plurality of the claimed "encoders;" (2) using "descriptors;" (3) analyzing "within a data block to identify one or more parameters or attributes of the data" which "excludes analyzing based solely on a descriptor"; (4) using "recognizable data tokens associated with the data packet"; (5) using "state machine"; and/or (6) data "compression and storage [that] occurs faster than said data stream is able to be stored on said memory device in said received form." *E.g.*, '728 Patent Claim 1; '203 Patent Claim 14; '908 Patent Claim 1; '751 Patent Claim 25. At bottom, Reduxio has not shown—and cannot show— that a human with pencil and paper can perform the claimed inventions.[13]

## B.   Reduxio Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2.

Because Reduxio cannot meet its burden under step 1, the inquiry ends there and step 2 need not be addressed. But in any event, Reduxio also cannot meet its burden under step 2.

### 1.   Section 101 analysis under *Alice* step 2 involves questions of fact.

Step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. Reduxio cannot prevail on this step simply by showing

---

[13] Reduxio relies on inapposite cases. For example, *RecogniCorp, LLC v. Nintendo Co.* involved an invention that "**does not even require a computer; the invention can be practiced verbally**." 855 F.3d 1322, 1328 (Fed. Cir. 2017). The claim in *RecogniCorp* was akin to "Paul Revere's 'one if by land, two if by sea' signaling system." *Id.* at 1326. In contrast, the claims at issue here require a computer and cannot be "practiced verbally"; instead, they are directed to technological improvements in digital-data compression.

that individual claim elements are "known in the art." *Bascom*, 827 F.3d at 1349–50. Indeed, "[t]he genius of invention is often a combination of known elements which in hindsight seems preordained." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001). Reduxio's arguments focus solely on individual elements and not as an ordered combination. This is fatal to its motion. Moreover, "that something is disclosed in a piece of prior art ***does not mean it was well-understood, routine, and conventional***." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Reduxio provides nothing more than attorney arguments in its assertion that some individual elements are purportedly not "inventive."[14]

The Federal Circuit in *Berkheimer* confirmed that any *Alice* step 2 analysis involves underlying factual questions. *Id.* at 1368-69. Specifically, the court clarified that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is ***a question of fact*** … [which] must be proven by ***clear and convincing evidence***." *Id.* After reviewing the intrinsic record in the case, the court held that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* Accordingly, the district court there committed legal error in granting summary judgment despite this factual dispute. *Id.*

In *Aatrix Software*, the Federal Circuit applied these principles to vacate a district court's §101 ruling pursuant to a Rule 12 motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018). Buttressing its precedent in *Berkheimer*, the court held that "patent eligibility can be determined at the Rule 12(b)(6) stage … ***only when*** there are no factual

---

[14] *See, e.g., Estee Lauder v. L'Oreal*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("Arguments of counsel cannot take the place of evidence lacking in the record.").

allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at 1125. Moreover, the court explained that "sources properly considered on a motion to dismiss [include] the complaint, the patent, and materials subject to judicial notice." *Id.* at 1128. The court then reviewed these sources and held that the district court erred in granting the motion to dismiss because plaintiff's "allegations at a minimum raise factual disputes underlying the §101 analysis, such as whether the claim term 'data file' constitutes an inventive concept, alone or in combination with other elements." *Id.* at 1126.

The *Aatrix* court did not end its analysis there. In the first decision of its kind in the §101 context, the court applied well established Rule 12(b)(6) principles and also found that the district court abused its discretion when it denied leave to file an amended complaint. In remanding, the court then expressly allowed the amended complaint, holding that, "[v]iewed in favor of [plaintiff], as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine." *Id.* at 1127-28; *id.* at 1126 ("[A]t that stage there certainly were allegations of fact that, if [plaintiff's] position were accepted, would preclude the dismissal.").

> **2.    The intrinsic record confirms that the claimed inventions involve unconventional technological solutions under step 2.**

The '728/'203 Patents address the prior art problems, including: "their content sensitive behavior...often referred to as data dependency"; "significant variations in the compression ratio obtained when using a single lossless data compression technique for data streams having different data content and data size"; "extremely large number of application programs, some of which do not possess published or documented file formats, data structures, or data type descriptors"; "rate at which new application programs are developed and the need to update file format data

16

descriptions." ('728 Patent at 2:7–3:55.) To solve these technological issues, the '728/'203 Patent claims required an unconventional combination of elements. For example, '728 Patent claim 1 required: (a) "content dependent data compression encoders"; (b) a different "single data compression encoder"; (c) a processor configured to (d) "analyze data within a data block to identify one or more parameters or attributes of the data"; (e) "the analyzing ... excludes analyzing based solely on a descriptor"; (f) "to perform content dependent data compression ... if the one or more parameters or attributes of the data are identified"; and (g) otherwise "to perform data compression with the single data compression encoder." The '203 patent has similar elements, but in context of decompression.

The '908 Patent addresses problems in digital-data compression, including: "high performance disk interface standards … offer only the promise of higher data transfer rates through intermediate data buffering in random access memory"; "[f]aster disk access data rates are only achieved by the high cost solution of simultaneously accessing multiple disk drives with a technique known within the art as data striping"; "problems with bandwidth limitations … by all other forms of sequential, pseudorandom, and random access mass storage devices." ('908 Patent at 2:20–54.) To address these, the claims require unconventional combination of elements, *e.g.*: (a) "a data accelerator" with two different compression techniques; (b) "a memory device"; (c) where the accelerator is configured to compress two data blocks; (d) including "a first data block with a first compression technique"; and (e) a "second data block with a second [and different] compression technique." (*Id.* 18:50-62.) The accelerator is unconventional, as it requires two different compression techniques and the structural capability of compressing and storing digital data faster than the digital data can be stored in uncompressed form.

The '751 Patent addresses specific problems in the prior art, including: "latency induced

by the act of encryption, compression, decryption, and decompression"; "substantial latency caused by aggregating data packets due to poor data compression efficiency and packet overhead"; capacity transmission limitations using existing T1 lines; "[t]he limitation of highly significant bandwidth and/or long delays with co-location processing and long latency times." ('751 Patent at 1:40–5:22.) The '751 Patent solves these problems by an unconventional compression system to provide a multiplication of bandwidth and a reduction in transmission latency. (*Id.* at 5:28–29, 6:13–19.) Claim 1 requires, e.g.,: (a) "identif[ying] a parameter, attribute, or value of the data block," (b) analysis "that excludes analyzing based solely on reading a descriptor," (c) "selecting an encoder associated with the identified parameter, attribute, or value"; (c) "compressing data … with the selected encoder … utilizing a state machine"; (d) "storing compressed data block"; and (e) wherein "the time of the compressing the data block and the storing the compressed data block is less than the time of storing the data block in uncompressed form."

The novel and unconventional aspects are further confirmed by the intrinsic patent file histories. For example, in granting patent issuance, the USPTO stated that the prior art does not teach the claimed inventions, including the USPTO specifically reciting the novel elements recited in the claims as reasons for allowance. (Ex. 5 ('728 FH), Ex. 6 ('203 FH), Ex. 7 ('908 FH).)[15] The inclusion of these facts are even more compelling because "setting forth of reasons for allowance is not mandatory." MPEP §1302.14. The novelty and unconventional nature of the '908 Patent is further confirmed by the fact that it has gone through the adversarial *inter partes* review process, after which all challenged claims were confirmed to be patentable. (Ex. 8.) Reduxio's unsupported assertion that claims are not "inventive" is false and contradicted by the intrinsic record. The

---

[15] Realtime respectfully requests the Court to take judicial notice of the file histories of the asserted patents, as the facts are part of the public record not subject to any reasonable dispute. *See Aatrix*, 882 F.3d at 1128; Fed. R. Evid. 201(b).

intrinsic record confirms that the claims improve computer capabilities, and that they recite unconventional solutions. At the very least, they raise factual issues on these points. Applying *Berkheimer* and *Aatrix Software*, these factual issues preclude dismissal.

In sum, the claimed inventions here do not merely recite well-understood, routine, conventional activities but, instead, are necessarily rooted in computer technology and provide a technological solution that improves computer functionality and overcome a problem specifically arising in the realm of compression of digital computer data. The patents amount to "significantly more" than simply claiming an abstract idea and are therefore patent-eligible. The asserted claims present an even clearer case of patent-eligibility than claims expressly approved by the Federal Circuit. *E.g., DDR*, 773 F.3d at 1259; *Finjan*, 879 F.3d at 1303.

In arguing that the claims lack inventive concept, Reduxio pursues the same flawed analysis rejected by the Federal Circuit, as well as by the Texas and Massachusetts courts in ruling that the same and related patents are patent eligible. (Ex. 1-4.) Reduxio asserts that the patents lack inventive concept because individual claim elements purportedly recite "generic" components (Mot. at 14-16.) But the fact that some of the individual claim limitations may be performed using known components does not render them ineligible. *Bascom*, 827 F.3d at 1350. Moreover, the claimed components are not generic. As discussed above, the processor recited in claim 1 of the '728 patent must be specially configured to perform the recited, non-conventional functions, including analyzing the data to identify one or more parameters or attributes and performing compression with a plurality of different encoders based on that analysis. Furthermore, Reduxio's arguments fail to consider the claims as a whole. For example, Reduxio fails to discuss, e.g., "descriptor …indicative of first compression technique," "excludes analyzing based solely on a descriptor," among others. At best, Reduxio's arguments are based on sheer attorney argument,

19

which is insufficient to meet its burden. Reduxio's failure to examine even one asserted claim as a whole is fatal to its motion. The claims recite specific, discrete implementations of digital data compression, and the recited claim elements "operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs*, 841 F.3d at 1300–01. Indeed, the Court "must take the specification's statements about the purported invention to be true," and is "not free to accept [defendant's] contrary attorney argument" that the claims are directed to conventional means.[16] At the very least, factual issues compel denial of the motion.[17]

### 3. Reduxio's "Remaining Claims" Shortcuts Also Fail.

Reduxio's motion should be denied also because it provides no clear and convincing evidence that ***all*** of the claims of the asserted patents (totaling 133 claims) are ineligible. Reduxio merely states that certain claims are "representative" (Mot. at 2) without explaining why or how. That is neither clear nor convincing evidence.[18] Reduxio cannot show that all 133 patent claims are ineligible under §101 under any standard, let alone the heightened standards on a motion to dismiss.

---

[16] *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, *5 (D. Del. Sept. 29, 2016); *Bascom*, 827 F.3d at 1352 (patents and facts are "construed in favor of [the patentee]").

[17] Should the Court be inclined to grant dismissal, Realtime respectfully requests that dismissal be without prejudice to amending the complaint because "there certainly [are] allegations of fact that, if … accepted, would preclude the dismissal." *Aatrix*, 882 F.3d at 1126.

[18] Reduxio's citation to *Content Extraction* (Mot. at 5) does not help meet its burden. *Content Extraction* is inapposite because the plaintiff there "never asserted in its opposition to [defendant's] motion that the district court should have differentiated any claim from those identified as representative" 776 F.3d at 1348.

May 1, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
Paul A. Kroeger
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Data LLC*